F. F. G. HARPER Co. *v.* UNITED STATES (No. 4359)[1]

[1] C. A. D. 201.

United States Court of Customs and Patent Appeals, March 23, 1942

*Lawrence A. Harper* and *Jordan & Klingaman* (*Edward F. Jordan*, of counsel), for appellant.

*Paul P. Rao*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Joseph F. Donohue*, special attorney, of counsel), for the United States.

[Oral argument February 3, 1942, by Mr. Edward F. Jordan and Mr. Rao.]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court (Third Division) which overruled a protest by appellant against the classification by the collector at the port of San Francisco of certain merchandise under the last provision of paragraph 713 of the Tariff Act of 1930 as dried egg yolk, and assessment with duty thereon at 18 cents per pound. Appellant claimed the merchandise to be dutiable under the second provision of said paragraph at 11 cents per pound, or, in the alternative, under the provisions of paragraph 1558 of said act at the rate of 10 per centum or 20 per centum ad valorem.

Paragraph 713 reads as follows:

PAR. 713. Eggs of poultry, in the shell, 10 cents per dozen; whole eggs, egg yolk, and egg albumen, frozen or otherwise prepared or preserved, and not specially provided for, whether or not sugar or other material is added, 11 cents per pound; dried whole eggs, dried egg yolk, and dried egg albumen, whether or not sugar or other material is added, 18 cents per pound.

This case was submitted to the trial court upon a stipulation wherein it was agreed that the merchandise here involved is the same in all material respects as that involved in the case of *F. F. G. Harper & Co. et al.* v. *United States*, 27 C. C. P. A. (Customs) 9, C. A. D. 53, and therein held to be dutiable at 18 cents per pound under said paragraph 713. It was also agreed that the record in said case be received in evidence. Said record includes the record in the case of *F. F. G. Harper & Co.* v. *United States*, 23 C. C. P. A. (Customs) 177, T. D. 48027, wherein we affirmed the judgment of the trial court overruling the protest therein involved without passing upon the question of law involved in the case of *Harper & Co. et al.* v. *United States*, *supra*, and again involved in the case at bar.

The facts in the case are not in dispute and they are concisely stated in the brief of appellee as follows:

\* \* \* it appears that the flake egg yolk in question was produced in China from fresh eggs the yolk and whites of which were separated immediately after they had been broken from the shell. The yolk were placed in a long tin belt revolving around two large drums within an air pocket through which heated air was forced. By this process most of the moisture was removed from the egg yolk. After dehydration the resulting product was screened to produce flakes of relatively uniform size (R. 79, Suit 4196).

This method of preparation produced a dried egg product which preserved as nearly as possible the natural properties of the original egg yolk. It was not, however, impervious to decay as were other dried eggs produced by methods involving the application of higher temperatures. Consequently, from the time of its production until its ultimate use it was kept under refrigeration as a means of preservation.

The question presented is whether the involved merchandise is "dried egg yolk," as that term is used in paragraph 713, and dutiable at 18 cents per pound as assessed, or whether, because it. must be kept under refrigeration, it is excluded from such classification and is dutiable under the second provision of the same paragraph for "egg yolk \* \* \* frozen or otherwise prepared or preserved" at 11 cents per pound.

This precise question was presented in the case of *Harper Co. et al.* v. *United States*, 27 C. C. P. A. (Customs) 9, C. A. D. 53, hereinafter referred to as the second *Harper* case, and there decided adversely to the contention here made by appellant. The Government here invokes the doctrine of *stare decisis*. While we might apply this doctrine in the case at bar for the reason that appellant has not pointed out any valid reason why our decision in the former case should be overruled, we prefer to consider the argument made by appellant as it claims, in effect, that our decision in the second *Harper* case is in conflict with our decision in the case of *United States* v. *Enbun Co.*, 19 C. C. P. A. (Customs) 79, T. D. 45224; we will also enlarge somewhat on the views expressed in our opinion in the second *Harper* case.

The case of *United States* v. *Enbun Co.*, *supra*, involved the dutiable classification of certain shaved or shredded unsalted fish, which had been classified by the collector under paragraph 720 of the Tariff Act of 1922 as fish "otherwise prepared or preserved." The importer claimed the fish to be dutiable under paragraph 718 of the same act as "dried fish, salted or unsalted."

The Government contended that because the fish had been subjected to the process of shredding or shaving, the fish had become more than dried fish and was properly classified by the collector as prepared fish. In our opinion we stated:

> If drying is in itself a particular kind of preservation, it seems to follow, as a natural sequence, that the language "dried fish" is more specific than the general language fish "otherwise prepared or preserved."

The question here before us was in no way involved in that case. The fish there involved had been classified as "preserved and prepared." That they were preserved was not challenged by either of the parties. The question there decided was one of relative specificity. While it is true that ordinarily perishable commodities can be preserved by drying, it does not at all follow that all dried perishable commodities are preserved.

As the question of the dutiability of fish dried but not preserved was not before us in the *Enbun* case, *supra*, our decision in that case has no relevancy to the case at bar.

Appellant does not contend that the involved egg yolk is not dried within the common meaning of that term; such contention could not be made, for it would be contrary to the definitions of the word "dried" given by all lexicographers.

It is elementary that statutes are to be interpreted according to the ordinary meaning of the words of which they are composed, unless some circumstance requires the application of a special meaning. In the case at bar the circumstances clearly indicate that the word "dried" should be given its common meaning.

We are convinced that our decision in the second *Harper* case was correct, and that the reasoning upon which it was based was sound; but we shall advert to one other matter supporting the conclusion there reached.

The rate provided in paragraph 713 for "whole eggs, egg yolk, and egg albumen, frozen or otherwise prepared" is 11 cents per pound.

The Summary of Tariff Information 1920, prepared for the use of the Committee on Ways and Means of the House of Representatives, states on page 324 that "One pound of dried egg equals 3.4 pounds of frozen or liquid whole egg * * *."

It is inconceivable that Congress, in the enactment of paragraph 713, intended that egg yolk not preserved, but with the moisture re-

moved, should be subject to the same rate of duty per pound as liquid egg yolk. Clearly Congress intended that dried egg yolk, regardless of its preservation, should bear a higher rate of duty than is provided for liquid egg yolk.

We adhere to the views expressed in our decision in the second *Harper* case, and the judgment appealed from is *affirmed*.